# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                               Case No. 07-Cr-167

DEYON J. LEE,

    Defendant.

## RECOMMENDATION TO UNITED STATES DISTRICT JUDGE LYNN ADELMAN ON THE DEFENDANT'S MOTION TO SUPPRESS

    On June 27, 2007, a federal grand jury sitting in this district returned a one-count indictment against the defendant charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The indictment also charges that the defendant is an Armed Career Criminal.

    On July 13, 2007, the defendant appeared before United States District Judge Lynn Adelman for arraignment, entering a plea of not guilty. The pretrial scheduling order was amended on two occasions. Pursuant to the amended scheduling order issued on September 12, 2007, the defendant filed a motion to suppress from use as evidence at trial the statements he made to law enforcement, the car keys seized from him, and the firearm seized by law enforcement officers from the automobile under the defendant's control. (Docket #25). This motion will be address herein.

## MOTION TO SUPPRESS

On October 25, 2007, the court conducted an evidentiary hearing on the defendant's motion to suppress. The hearing was continued on October 26, 2007. At the hearing, Officers Brian Maciejewski and Brian Damon of the Milwaukee Police Department (MPD) testified on behalf of the government. On October 26, 2007, the defendant presented a videotape containing images from the surveillance cameras at the Citgo gas station on North 20th Street and West Center Street in Milwaukee, Wisconsin. Based upon the evidence presented at the hearings, and the stipulations and submissions of the parties, the court now makes the following findings of fact.

## Findings of Fact

On May 8, 2007, a City of Milwaukee police dispatcher received a 911 call from a person who did not offer any personal information. The caller told the dispatcher that there was a black male at 20th and Center Streets in Milwaukee. The black male was inside a parked black Lexus vehicle and had just offered the caller a gun. The call was received at 22:31 (10:31 p.m.). A Milwaukee police squad car containing two officers was assigned to investigate at 22:32 (10:32 p.m.).

MPD Officers Brian Maciejewski and Brian Damon, who were in uniform in a marked squad car, went to the area. The dispatcher had described the vehicle as a black Lexus and gave its location as 20th and Center Streets. The dispatcher did not describe the black male in any detail. As Office Maciejewski was driving east on West Center Street, his partner, Officer Damon, observed a black male exit the driver's side of the black Lexus which was parked in front of the Citgo gas station at 2008 West Center Street. The black Lexus matched the vehicle description in the text the officers had received. The officers did not have their

- 2 -

lights and siren on at the time. The squad car then swung around and entered the gas station parking lot from the east.

Officer Damon saw the black male, subsequently identified as the defendant, get out of the black Lexus and enter the gas station.[1] The black male then came out of the gas station and walked toward the black Lexus. The black male walked to the passenger side of the Lexus which was parked in front of the double entry doors and parallel to the gas station. The Lexus was facing west. Officer Maciejewski observed the defendant looking inside the vehicle. The gas station lot was well lit.

The officers approached the defendant and identified themselves. Officer Maciejewski asked the defendant what he was doing there and if the black Lexus was his vehicle. This encounter occurred on the sidewalk outside the gas station store. Officer Maciejewski was a few feet from the defendant. The defendant did not respond to the inquiry. Officer Damon was standing to the side of Officer Maciejewski. The defendant became somewhat loud and profane and put his hands in his pocket several times. The defendant appeared very intoxicated. His eyes were very glassy, his speech was slurred, he was uncooperative and did not answer the questions that were asked. The defendant also continued to put his hands in his pocket despite being asked by Officer Maciejewski multiple times to keep his hands out of his pocket. This encounter lasted about one minute.

Officer Maciejewski was concerned for his and his partner's safety given the dispatch about a person with a gun and a black Lexus on 20th and Center Streets. Officer Maciejewski

---

[1] At the preliminary hearing in state court, Officer Damon also testified that he first saw the defendant leave the vehicle and enter the store. (Tr. at 42). In his report of the incident which was written the same evening, Officer Damon wrote: "Upon our arrival, I observed a subject next to the black Lexus that was described by the anonymous caller. The subject then went into the store and then exited to come back to the vehicle when I did a field interview speak (sic) to the subject. (Tr. at 42-43; Exh.1003).

- 3 -

made the decision to pat down the defendant because the defendant continued to put his hands in his pocket despite being told not to do so.

The defendant was told to turn around and was facing the gas station store when Officer Maciejewski began the pat down. The defendant kept putting his hands in his pockets and refused to comply with the officer's directive that his hands remain out of his pockets. Officer Maciejewski pulled the defendant's hands out of his pockets and the defendant was placed in handcuffs. The officer continued the pat down. In the defendant's front pants pocket, Officer Maciejewski found car keys which had the Lexus emblem on them. No gun was found on the defendant. The officers looked inside the black Lexus. The gun was observed in plain view inside the vehicle. Officer Damon testified that the weapon was seen in the vehicle before the Lexus car keys were found in the defendant's pocket.

In his arrest and detention report, known as a PA-45, which was completed on May 8, 2007, Officer Maciejewski did not check the circle marked "intoxicated." (Tr. at 21).[2] In response to the inquiry about the defendant's demeanor, he circled "argumentative." (Tr. at 29). After the defendant was taken into custody, the officers determined that the defendant had an outstanding municipal warrant.

The following morning, while still in police custody, the defendant was interrogated by a third Milwaukee police officer. The defendant made inculpatory statements to this officer.

---

[2] Exhibit 1001 was not offered or received.

**Analysis**

The defendant asserts that his statement and the evidence, including the gun, must be suppressed because the uncorroborated anonymous tip did not establish reasonable suspicion to detain the defendant. Thus, the defendant asserts that the case is governed by Florida v. J.L., 529 U.S. 266 (2000). The government did not file a post-hearing brief.[3]

In Florida v. J.L., 529 U.S. at 274, the Supreme Court held that an anonymous tip of a person carrying a gun is not, without more, sufficient to justify a police officer's stop and frisk of that person. The Court stated that while there are situations in which a suitably corroborated anonymous tip exhibits "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop," the officers' suspicion that the defendant was carrying a weapon arose solely from the anonymous tip. Id. at 270 (quoting Alabama v. White, 496 U.S. 325, 329 [1990]).

However, "mere police questioning does not constitute a seizure." Florida v. Bostick, 501 U.S. 429, 434 (1991). Thus, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if the is willing to answer some questions [or] by putting questions to him if the person is willing to listen." Id. (quoting Florida v. Royer, 460 U.S. 491, 497 [1983]). "So long as a reasonable individual would feel free 'to disregard the police and go about his business,'

---

[3]On November 8, 2007, the court ordered the parties to file a short brief by November 16, 2007, addressing the criteria for application of the plain view doctrine in light of the evidence in the case. The government failed to file a post-hearing brief as ordered.

The defendant filed a supplemental brief, but objects to the court's order regarding further briefing and moves to strike any supplemental brief filed by the government. Since the government failed to file any brief, the defendant's request to strike such brief is moot. The defendant cites no authority for his contention that the court cannot order supplemental briefing. Moreover, as noted in the court's November 8, 2007, order, neither party addressed the plain view doctrine, even though Officer Damon testified that the officers saw the weapon in plain view inside the Lexus. (Tr. 38).

- 5 -

the encounter is consensual and no reasonable suspicion is required." Id. (quoting California v. Hodari D., 499 U.S. 621, 628 [1991]).  Thus, in this case, the officers could approach the defendant and ask him questions without having reasonable suspicion to believe that he was involved in criminal activity.  The defendant and the officers were standing next to the black Lexus during this encounter.

The officers observed that the defendant was very intoxicated, belligerent and uncooperative.  The defendant's eyes were glassy, his speech was slurred and he continued to ignore the officers' request to keep his hands out of his pockets.  Officer Damon testified that he had observed the defendant get out of the Lexus, enter the gas station store and after exiting the store, walk back to the vehicle.  This testimony is consistent with his earlier testimony at a state court hearing in which he stated that he first saw the defendant leave the vehicle and enter the store.  In his incident report, however, Officer Damon did not state that he saw the defendant get out of the black Lexus.

Here, the officers had information that an anonymous caller had advised the police that a black male inside a black Lexus vehicle parked at 20th and Center Streets had offered the caller a gun.  The defendant was observed exiting a black Lexus which was parked at a Citgo gas station at 2008 W. Center Street, enter the gas station store and walk to the passenger side of the vehicle.  The black Lexus and the defendant, a black male, matched the limited description given by the anonymous caller of the person who had offered the caller a gun.  When approached by the police, the defendant was argumentative and intoxicated.  He exhibited suspicious behavior by refusing to keep his hands out of his pockets despite Officer Maciejewski's numerous requests to the defendant to do so.  Given the information from the anonymous caller and the defendant's conduct, the officers understandably were concerned

- 6 -

for their safety. Whether all of these considerations constitute reasonable suspicion to justify a Terry[4] stop is a close call. Nonetheless, considering the totality of the circumstances, the court concludes that the officers had reasonable suspicion to confront the defendant and conduct a pat down search. At some point during the pat down, the keys to the Lexus were recovered from the defendant's pocket.

Even if the court were to conclude that the officers lacked reasonable suspicion to conduct a pat down search of the defendant, the evidence establishes that the officers, who were standing with the defendant next to the black Lexus, looked inside the vehicle and saw the gun in plain view. Officer Damon testified that the gun was seen before the keys to the Lexus were retrieved from the defendant's pocket.

The plain view doctrine allows a police officer to conduct warrantless seizures of private possessions when: 1) the officer has not violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; 2) the incriminating character of the evidence is immediately apparent; and 3) the officer has a lawful right of access to the object itself. Horton v. California, 496 U.S. 128 142 (1990); United States v. Willis, 37 F.3d 313, 316 (7th Cir. 1994) (same standard applied to seizure of evidence in a car).

Here, the black Lexus was parked at a gas station lot, subject to observation by anyone who cared to look. The officers had a right to be standing next to the Lexus and were legitimately in a position to look inside the vehicle. While there, they saw a weapon inside the vehicle in plain view. "The seizure of property in plain view involves no invasion of privacy and *is presumptively reasonable, assuming that there is probable cause to associate the property*

---

[4] Terry v. Ohio, 392 U.S. 1, 21 & 30 (1968).

- 7 -

*with criminal activity."* <u>Texas v. Brown</u>, 460 U.S. 730, 741-42 (1983) (italics in original) (quoting <u>Payton v. New York</u>, 445 U.S. 573, 587 [1980]).

It is well-settled that probable cause is a flexible, common sense concept. <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983); <u>see</u> <u>also</u>, <u>Brinegar v. United States</u>, 338 U.S. 160, 175 (1949). Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' <u>Carroll v. United States</u>, 267 U.S. 132, 162 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." <u>Texas v. Brown</u>, 460 U.S. at 742; <u>see</u> <u>also</u>, <u>Colorado v. Bannister</u>, 449 U.S. 1, 4 (1980).

Here, in light of the information from the anonymous caller that the person in the black Lexus offered a gun to the caller and the observation of the weapon in the black Lexus, the officers had probable cause to believe the gun might be evidence of a crime. Therefore, the officers properly could seize the gun which was in plain view. Thus, the firearm is not subject to suppression. Similarly, the defendant's statement, made to law enforcement officers and the car keys seized from the defendant need not be suppressed. Accordingly, for the reasons stated herein, the court will recommend that the defendant's motion to suppress be denied.

## CONCLUSION

**NOW, THEREFORE, IT IS RECOMMENDED** that the United States district judge enter an order **denying** the defendant's motion to suppress. (Docket # 25).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General L. R. 72.3 (E.D. Wis.), whereby written objection to any recommendation herein or part thereof may be filed

within ten days of service of this order. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 28th day of November, 2007.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge