# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                         Case No. 07-CR-167

**DEYON LEE**
        **Defendant.**

## DECISION AND ORDER

Defendant Deyon Lee, charged with possession of a firearm as a felon, objects to a magistrate judge's recommendation that his motion to suppress evidence be denied. I review the matter de novo, Fed. R. Crim. P. 59(b)(3), but need not to hold a de novo evidentiary hearing, see United States v. Raddatz, 447 U.S. 667, 680-81 (1980). Based on the largely undisputed facts presented to the magistrate judge and in defendant's moving papers, I find that the police did not violate the Fourth Amendment in approaching defendant, patting him down or discovering the firearm which led to his arrest. Therefore, I will adopt the recommendation and deny the motion.

**I.**

On May 8, 2007, at about 10:32 p.m., a City of Milwaukee police dispatcher received a 911 call from an unknown person, who indicated that a black male inside a black Lexus parked at 20th and Center Streets had just offered the caller a gun. Milwaukee police officers Brian Maciejewski and Brian Damon proceeded to the area to investigate, arriving at about 10:38 p.m., and observed a black Lexus parked in front of the Citgo Gas Station at 2008 West Center Street. (Def.'s Mot. to Suppress ¶¶ 1-3; Oct. 25, 2007 Hr'g Tr. at 3, 5, 19; Hr'g Ex. 1000.)

As the officers drove past the gas station, Damon observed a black male (later identified as defendant) getting out of the Lexus. Damon advised Maciejewski (who was driving) of this observation, and they swung around, entered the gas station parking lot and approached the Lexus. As they approached, Damon saw defendant coming out of the gas station building and heading toward the Lexus. By the time the officers had pulled up, defendant was standing right by the Lexus on the passenger side. (Id. at 6; 7-9; 32-33.)

The officers exited their squad, approached defendant and asked him what he was doing there and if the Lexus was his vehicle. (Id. at 9-10) The officers had not activated their squad's lights or sirens at that point (Id. at 8; 34) and did not otherwise seek to curtail defendant's movements; thus, they did not effect a seizure within the meaning of the Fourth Amendment by simply approaching him to ask questions. See Florida v. Bostick, 501 U.S. 429, 434 (1991) (stating that law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place and asking him questions); see also United States v. Bradley, 196 F.3d 762, 767 (7th Cir. 1999) (noting that a seizure triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen). Therefore, although an anonymous tip that a person has a gun will generally not support a Terry stop, see Florida v. J.L., 529 U.S. 266 (2000), the officers required no quantum of suspicion to merely approach defendant to ask him questions, see United States v. Seymour, 472 F.3d 969, 971 (7th Cir.), cert. denied, 127 S. Ct. 3022 (2007) (stating that "a police officer doesn't need even bare suspicion simply to approach a person and ask a question of him").

Defendant, who appeared to be intoxicated, became loud and profane, and stuck his

2

hands into his pockets several times. (Id. at 9-10; 34-36.) The officers asked defendant to keep his hands out of his pockets several times, but he did not obey (Id. at 10-11), so Maciejewski decided to pat him down due to officer safety concerns (Id. at 12-13; 34-36). Given the nature of the call (i.e., a man with a gun), the time of day (late at night) and defendant's provocative and uncooperative behavior, it was reasonable for the officers to conduct a pat down. See, e.g., United States v. Kemp, 214 Fed. Appx. 127, 131 (3d Cir. 2007) (upholding protective search for weapons where the encounter occurred at night, suspect failed to obey commands to keep his hands out of his pockets and was argumentative and increasingly loud); United States v. Williams, 403 F.3d 1188, 1193-94 (10th Cir. 2005) (finding reasonable suspicion to seize and search the defendant, where officers received a tip that a man sitting at the defendant's table was waving a gun, and officers observed the defendant behaving suspiciously, fidgeting in his seat and keeping his hands in his pockets despite their requests that he place them on the table); see also United States v. Mancillas, 183 F.3d 682, 696-97 (7th Cir. 1999) (finding reasonable suspicion where officer, responding to a report of a man with a gun late at night, observed suspects exit a car and walk in different directions).

Maciejewski told defendant to turn around, but defendant kept putting his hands in his pockets and refused to comply with the officers' directives, so the officers pulled his hands out of his pockets and handcuffed him for safety reasons. (Id. at 13; 23; 37.) This measured use of force did not contravene the permissible limits of a Terry stop. See United States v. Stewart, 388 F.3d 1079, 1084-85 (7th Cir. 2004) (stating that an officer need not risk his life in order to make an investigatory stop and thus may use handcuffs if reasonable under the circumstances); United States v. Smith, 3 F.3d 1088, 1094-95 (7th Cir. 1993) (noting that handcuffing does not necessarily transform a Terry stop into a full-blown arrest).

3

The officers then looked into the Lexis and observed a handgun in plain view on the floor in front of the driver's seat. (Id. at 38; Mot. to Suppress ¶ 7.) The discovery of the gun, coupled with the nature of the police dispatch (i.e., a black man in a black Lexus trying to dispose of a gun) and the officers' observations of defendant leaving and returning to the Lexis, provided the officers with probable cause to arrest defendant and seize the gun.[1] Indeed, even if the officers previously violated defendant's rights by stopping, handcuffing and patting him down – and I find that they did not – it is difficult to see any connection between such action and the discovery of the gun in plain view. The officers were permitted to be where they were, standing outside defendant's car in a public place;[2] the incriminating character of handgun was, under the circumstances, immediately apparent; and the officers had a lawful right of access to the gun itself. See United States v. Willis, 37 F.3d 313, 316 (7th Cir. 1994) (finding that even if the initial stop of the defendant was unjustified, the officer was permitted to seize a gun observed in plain view in the defendant's car and arrest the defendant for unlawful possession of a firearm); see also State v. Walls, 190 Wis. 2d 65, 73 (Ct. App. 1994) (holding that a person commits the Wisconsin offense of carrying concealed a weapon in an automobile where the weapon is indiscernible from the ordinary observation of a person located outside and within

---

[1] The officers recovered a set of keys for the Lexus from defendant's person, but it is unclear whether they did so before or after they located the gun. (Id. at 23; 38.) In any event, it is undisputed that the officers did not need the keys to enter the Lexus and find the gun. Rather, they saw the gun in plain view while standing outside the car. Nor is it necessary to rely on the discovery of the keys to link defendant to the Lexus, based on Damon's observation of defendant getting out of the driver's side of the Lexus and both officers' observation of defendant returning to the Lexus after he left the gas station building.

[2] See Texas v. Brown, 460 U.S. 730, 740 (1983) ("There is no legitimate expectation of privacy, shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.") (internal citations omitted).

4

the immediate vicinity of the vehicle).³

The following morning, while still in police custody, a Milwaukee police officer interrogated defendant, and defendant made inculpatory statements. (Def.'s Mot. to Suppress ¶¶ 7-8.) Defendant provides no independent basis for suppressing the statement, and because the preceding arrest was lawful, the statement is not fruit of the poisonous tree.

Therefore, for these reasons and those stated by the magistrate judge, the motion to suppress physical evidence and statements will be denied.

**II.**

In his objections, defendant notes some inconsistencies in the evidence, which he claims the magistrate judge overlooked. None change the outcome.

First, defendant notes some contradictions between the testimony of the officers and the Citgo surveillance video regarding the direction from which the officers approached his vehicle. However, the essential facts concerning the officers' interaction with defendant after they arrived are basically undisputed,⁴ and I fail to see how minor discrepancies on ancillary matters such as the direction from which the officers entered or the presence of another (yellow) car in the parking lot should affect the outcome.

Second, defendant notes that the officers testified that he was intoxicated but failed to indicate such on their report. However, the officers did indicate that defendant was "argumentative" on the report (Tr. at 29), which corroborates their testimony that defendant's

---

³The Wisconsin Supreme Court has noted that, under Walls, "a person who carries a weapon in a car with the weapon in plain view on the front seat may have nonetheless unlawfully concealed the weapon." State v. Dundon, 226 Wis. 2d 654, 661 n.7 (1999).

⁴The surveillance video does not depict the interaction between defendant and the officers. (Id. at 46.)

5

conduct gave rise to officer safety concerns.

Third, defendant notes that at the hearing before the magistrate judge Damon testified that he saw defendant "getting out" of the Lexus (Tr. at 33), but in a previous state court proceeding testified that he saw defendant "leave the vehicle" (Tr. at 42) and in his report stated that upon arrival he saw defendant "next to" the Lexus (Tr. at 42; Ex. 1003). Again, I see no significant contradiction; the officers were consistent in their testimony that they saw defendant leave the Lexus and return to it after visiting the gas station building. Their observations were sufficient to tie defendant to the Lexus for purposes of investigating the tip and making an arrest after their discovery of the gun in the car.

Fourth, defendant notes that the officers testified that they were dispatched to a report of a black male "selling a firearm" (Def.'s Objections at 3, citing Tr. at 7, 32), while the dispatch print-out makes no mention of a firearm being sold. The print-out says that the suspect "offered the caller a gun" (Tr. at 17; Ex. 1000), which is consistent with Damon's testimony that "somebody had been offered a firearm for sale." (Tr. at 32.)

Finally, defendant complains about Damon's testimony as to the discovery of the gun in plain view. However, he makes no showing that this testimony should not have been admitted and, for the reasons discussed above, it really makes no difference whether the discovery of the gun preceded or followed the seizure of the keys.

Turning to the magistrate judge's legal analysis, defendant first argues that the government failed to meet its burden of justifying the arrest because it did not file briefs. However, the government did present sufficient evidence to justify denying the motion.[5]

---

[5] I note that the facts alleged in defendant's motion support application of the plain view doctrine. In the motion, defendant alleges that after the officers patted him down, "One of the

6

Defendant next argues that Florida v. Bostick is inapplicable because his initial encounter with the police was not consensual. However, it is undisputed that when they approached defendant the officers did not activate their siren or emergency lights, order defendant to stop or otherwise restrain his ability to leave. Thus, there was no seizure. See Bradley, 196 F.3d at 767. The fact that the officers approached defendant to investigate a specific offense did not transform the encounter into a seizure. Cf. United States v. James, 113 F.3d 721, 727-28 (7th Cir. 1997) (stating that a person is not in custody for purposes of Miranda just because the police officer questioning him considers him a suspect). Nor does it matter that the officers did not have a better description of the man who offered the caller a gun. Because the initial encounter was consensual, the officers needed no quantum of suspicion. As discussed above, defendant's actions thereafter supported the officers' decision to conduct a pat down. In any event, as also discussed above – and as appears to be conceded in defendant's motion – the seizure of the gun was unrelated to the frisk.

**III.**

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 35) is **ADOPTED**, and defendant's motion to suppress (R. 25) is **DENIED.**

Dated at Milwaukee, Wisconsin, this 11th day of January, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

officers then looked into the Lexus and saw a handgun on the floor in front of the driver's seat. Mr. Lee was then arrested and taken to the police station." (Def.'s Mot. to Suppress ¶ 7.)

7